# NEWTON v. FURST AND BRADLEY COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Argued December 3, 1886. — Decided December 13, 1886.

The first claim of reissued letters-patent No. 8986, granted to Robert Newton, December 2d, 1879, for an improvement in gang-ploughs, (the original patent, No. 56,812, having been granted to F. S. Davenport, as inventor, October 9th, 1886,) namely, " 1. In a wheel-plough, the combination, with a swing-axle and ground or carrying-wheel, of friction-clutch mechanism, and means for engaging and disengaging the latter with the ground or carrying-wheel, said parts being constructed and adapted to raise the plough by locking the swing-axle to the carrying-wheel by friction-clutch engagement, and raise the plough-beam by the draft or power of the team, substantially as set forth," is, in view of the state of the art at the time of the invention of Davenport, not infringed by an apparatus in which the axle and the friction-clutch mechanism are different, as devices, from those of the patent.

The first claim of the reissue is invalid, the reissue having been applied for more than thirteen years after the original patent was granted, and after the defendant had begun to make machines of the pattern complained of.

The defendant's machine did not infringe the original patent, and the reissue was taken to cover it.

This was a bill in equity to recover for the infringement of letters-patent. The case is stated in the opinion of the court.

*Mr. Lewis L. Coburn* for appellant.

*Mr. L. L. Bond* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity brought in the Circuit Court of the United States for the Northern District of Illinois by Robert Newton against the Furst and Bradley Manufacturing Company and others, to recover for the infringement of reissued letters-patent No. 8986, granted to the plaintiff, December 2d, 1879, on an application, filed October 15th, 1879, for an improvement in gang-ploughs, (the original patent, No. 56,812, having been granted to F. S. Davenport, as inventor, October 9th, 1866).

The specification and claims of the original, and those of the reissue, and the drawings of the reissue, are as follows, the parts in each which are not found in the other being in italic:

|  |  |
|---|---|
| *Original.* | *Reissue.* |
| "Be it known that I, F. S. Davenport, of Jerseyville, Jersey county, and State of Illinois, have invented a new and improved *gang*-plough; and I do hereby declare that the following is a full, clear, and exact description thereof, which will enable others skilled in the art to make and use the same, reference being had to the accompanying drawings, [p. 376] forming part of this specification, *in which* — | "Be it known that I, F. S. Davenport, of Jerseyville, Jersey county, and State of Illinois, have invented a new and improved *wheel*-plough; and I do hereby declare that the following is a full, clear, and exact description thereof, which will enable others skilled in the art to make and use the same, reference being had to the acompanying drawings, forming part of this specification. [See page 376.] |

*The object of my invention is to provide improved means for utilizing the draft of the team in raising a plough from the ground; and to this end my invention consists, first, in the combination, with a swing-axle and ground or carrying-wheel, of friction-clutch mechanism and means for engaging and disengaging the latter with the ground or carrying-wheel, said parts being constructed and adapted to raise the plough by locking the swing-axle to the carrying-wheel by friction-clutch engagement, and raise the plough-beam by the draft or power of the team; second, in the combination, with a ground-wheel, a swing-axle, and a plough-beam connected with the latter, of clutch mechanism connected to the axle and adapted by engagement with the wheel to utilize the draft of the team in turning the swing-axle into upright position, and thereby raise the plough-beam; third, in the combination, with a ground-wheel, a swing-axle, and a plough-beam connected to the latter, of a friction-clutch connected to the axle and adapted, by contact with the wheel, to turn the axle into upright position, and thereby raise the plough-beam by the aid of the draft of the team.*

Opinion of the Court.

Figure 1 is a plan or top view of my invention; Fig. 2, a side view of the same, partly in section, as indicated by the line *x x*, Fig. 1; Fig. 3, a transverse vertical section of the same, taken in the line *y y*, Fig. 1. Similar letters of reference indicate like parts. [See page 376.]

This machine consists of a frame, A, made of two parallel beams or bars, *a a*, braced together near the front and back pieces, *b b*. From each of these beams or bars depends a plough, B. To the front crosspiece is bolted an iron standard, C, strengthened by an iron stay, D, running down to the back cross-piece. To the top of the standard, C, is attached a spring seat, E, the whole supported upon two wheels, F F, each turning upon *an iron axle, c, attached to a hinged board*, G.

It will be observed that one of the *axles, c,* is attached to the front or upper side of the *hinged board,* G, and the other to the back or under side, in such a manner that when it is turned down in a horizontal position to lower the ploughs to the ground, the wheel that runs in the furrow will be as much lower than the other as

*Referring to the drawings* [p. 376], Figure 1 is a plan or top view of my invention; Fig. 2 *is* a side view of the same, partly in section, as indicated by the line *x x*, Fig. 1; Fig. 3 *is* a transverse vertical section of the same, taken in the line *y y*, Fig. 1. Similar letters of reference indicate like parts.

This machine consists of a frame, A, made of two parallel beams or bars, *a a*, braced together near the front and back pieces, *b b*. From each of these beams or bars depends a plough, B. To the front crosspiece is bolted an iron standard, C, strengthened by an iron stay, D, running down to the back cross-piece. To the top of the standard, C, is attached a spring seat, E, the whole supported upon two wheels, F F, each turning upon *a journal, c, of* a *swing-axle*, G.

It will be observed that one of the *journals, c,* is attached to the front or upper side of the *swing-axle,* G, and the other to the back or under side, in such a manner that when it is turned down in a horizontal position to lower the ploughs to the ground, the wheel that runs in the furrow will be as much lower than

the depth of the furrow may require. The *axle* that carries the wheel that runs in the furrow is so formed that it may be removed from the back of the *hinged board* and *bolted* to the front, so that the machine may run level when there is no furrow for the wheel to run in, as is the case when preparing the ground for cotton seed.

The *hinged board* G is attached to the plough-frame by two iron hinges, H H', the one H on the side of the long beam forming an arm or lever, I, to which is attached a chain, J, which passes over a wheel, K, and is made fast to the plough-frame. The wheel K turns upon a stud in the end of a lever, L, this lever being bolted to the foot-board M, which is hinged to the plough-frame in the same manner and at the same place as the axle-*board* G. To the opposite end of the foot-board is bolted a bracket or stop, *d*, against which rests an arm, *e*, by which the *hinged board* G is operated, the arm *e* being held in the vertical position by a latch, N, which is lifted by placing the foot on the back part of it.

Now, it will be seen that to

the other as the depth of the furrow may require. The *journal* that carries the wheel that runs in the furrow is so formed that it may be removed from the back of the *swing-axle* and *be secured* to the front, so that the machine may run level when there is no furrow for the wheel to run in, as is the case when preparing the ground for cotton seed.

The *swing-axle* G is attached to the plough-frame by two iron hinges, H H', the one H on the side of the long beam forming an arm or lever, I, to which is attached a chain, J, which passes over a wheel, K, and is made fast to the plough-frame. The wheel K turns upon a stud in the end of a lever, L, this lever being bolted to the foot-board M, which is hinged to the plough-frame in the same manner and at the same place as the axle G. To the opposite end of the foot-board is bolted a bracket or stop, *d*, against which rests an arm, *e*, by which the *swing-axle* G is operated, the arm *e* being held in the vertical position by a latch, N, which is lifted by placing the foot on the back part of it.

Now, it will be seen that to

lower the *ploughs* to the ground it is only necessary to bring down the arm *e* till a block, *f*, which is bolted to its side, rests upon a *roller*, *g*, of a lever, O, which is secured in the required position by a notched quadrant, N. It will be observed, that, as the lever O is moved forward from notch to notch, the ploughs will cut deeper and deeper, and the reverse as it is drawn back. By these details the driver has entire control of the depth of the furrow without moving from his seat or stopping the machine.

Through a mortise in the top of *the* arm *e* passes a small iron lever, P, to which is attached a rod, Q, connecting it with a brake, R, which acts upon one of the wheels F, the brake R working upon a pin fixed in a block of wood or an iron plate fastened to the front side of the *hinged board* G. The object of this brake is to facilitate the operation of lifting the ploughs out of the ground when the machine is moving forward, for by applying but a little force to the lever P the brake is pressed sufficiently hard to the wheel to turn the *hinged board* to the vertical position.

lower the *plough* to the ground it is only necessary to bring down the arm *e* till a block, *f*, which is bolted to its side, rests upon a *stop*, *g*, of a lever, O, which is secured in the required position by a notched quadrant, N. It will be observed, that, as the lever O is moved forward from notch to notch, the ploughs will cut deeper and deeper, and the reverse as it is drawn back. By these details the driver has entire control of the depth of the furrow without moving from his seat or stopping the machine.

Through a mortise in the top of arm *e* passes a small iron lever, P, to which is attached a rod, Q, connecting it with a brake, R, which acts upon one of the wheels F, the brake R working upon a pin fixed in a block of wood or an iron plate fastened to the front side of the *swing-axle* G. The object of this brake is to facilitate the operation of lifting the ploughs out of the ground when the machine is moving forward, for by applying but a little force to the lever P the brake is pressed sufficiently hard to the wheel to turn the *swing-axle* to the vertical position.

The draft-pole or tongue C† is fastened to the under side of the' foot-board M by two bolts, a†, a number of holes being made, so that the tongue may be moved to the right or. left to give the required land to the ploughs. The back holes b† are made oblong, so that it can be slanted when needed. The tongue may, if necessary, be used on either side of the draft-line, and the double tree attached to the foot-board independent of the tongue. This arrangement is chiefly for the convenience of using three horses abreast.

When the *hinged board* G is turned down in the horizontal position the lever or arm I gives the chain J, which is attached to it, considerable slack, allowing the tongue to move up and down without influencing the ploughs, constituting what is commonly called 'a limber tongue.'

In regard to raising the ploughs out of the ground, it will be observed that the front part of the machine is lifted nearly two-thirds of its course before the lever I tightens the chain and commences to lift the back part. This contrivance produces an easy

The draft-pole or tongue Cˣ is fastened to the under side of the foot-board M by two bolts, aˣ, a number of holes being made, so that the tongue may be moved to the right or left to give the required land to the ploughs. The back holes bˣ are made *as* oblong *slots*, so that *the tongue* can be slanted when needed. The tongue may, if necessary, be used on either side of the draft-line, and the double tree attached to the foot-board independent of the tongue. This arrangement is chiefly for the convenience of using three horses abreast.

When the *swing-axle* G is turned down in the horizontal position the lever or arm I gives the chain J, which is attached to it, considerable slack, allowing the tongue to move up and down without influencing the ploughs, constituting what is commonly called a 'limber tongue.'

In regard to raising the ploughs out of the ground, it will be observed that the front part of the machine is lifted nearly two-thirds of its course before the lever I tightens the chain and commences to lift the back part. This contrivance produces an easy motion

motion, without causing either jerk or strain upon the horses or the machine.

The hind plough can be raised or lowered independent of the other, the standard B' sliding in an iron block, O†, and operated by a lever, A†, extending forward to the front of the seat, and secured in the required position by notches in the side of the seat-standard, as shown in Fig. 3.

I claim as new and desire to secure by letters-patent —

1. *The lever P, rod Q, and brake R, arranged and operated as and for the purpose described.*

2. *The hinged board G, in connection with the reversible axles, substantially as and for the purpose described.*

3. *The lever O and quadrant N, for regulating the depth of the furrow, substantially as and for the purpose specified.*

4. *Lifting the hind part of the machine by means of the lever or arm I, in connection with the chain J, wheel K, and lever L, these parts operating together, substantially as and for the purpose described.*

5. *Hinging the foot-board*

without causing either jerk or strain upon the horses or the machine.

The hind plough can be raised or lowered independent of the other, the standard B' sliding in an iron block, O$^x$, and operated by a lever, A$^x$, extending forward to the front of the seat, and secured in the required position by notches in the side of the seat-standard, as shown in Fig. 3.

*Having fully described my invention, what I claim as new, and desire to secure by letters-patent, is —*

1. *In a wheel-plough, the combination, with a swing-axle and ground or carrying-wheel, of friction-clutch mechanism, and means for engaging and disengaging the latter with the ground or carrying-wheel, said parts being constructed and adapted to raise the plough by locking the swing-axle to the carrying-wheel by friction-clutch engagement, and raise the plough-beam by the draft or power of the team, substantially as set forth.*

2. *In a wheel-plough, the combination, with a ground-wheel, a swing-axle, and a plough-beam connected to the latter, of clutch-mechanism connected to the axle, and adapted, by engage-*

*M to the plough-frame, as described.*

*6. Securing the tongue or draft-pole to the foot-board M, in the manner and for the purpose described.*

*7. The sliding plough-standard B', guide-block O†, lever A†, and notched seat-standard C, when used together and in connection with the other parts.*

*8. Connecting the lever L with the tongue or draft-pole by fastening it to the foot-board, the whole operating together, substantially as and for the purpose set forth."*

*ment with the wheel, to utilize the draft of the team in turning the swing-axle into upright position, and thereby raise the plough-beam, substantially as set forth.*

*3. In a wheel-plough, the combination, with a ground-wheel, a swing-axle, and a plough-beam connected to the latter, of a friction-clutch connected to the axle, and adapted, by contact with the wheel, to turn the axle into upright position, and thereby raise the plough-beam by aid of the draft of the team, substantially as set forth."*

The answer sets up, among other defences, non-infringement; and that the reissued patent is invalid because not for the same invention as the original. On a hearing on proofs, the Circuit Court entered a decree, which finds that the equities are with the defendants, and that they do not infringe on the rights of the plaintiff, and dismisses the bill. The plaintiff has appealed to this court.

By the opinion of the Circuit Court in the case, 11 Bissell, 405, it appears that the defences of non-infringement and of the invalidity of the reissue were sustained. Infringement is not asserted in this court as to any claim of the reissue but the first.

In regard to the subject-matter of that claim, the specification of the reissue states that the invention consists "in the combination, with a swing-axle and ground or carrying-wheel, of friction-clutch mechanism, and means for engaging and disengaging the latter with the ground or carrying-wheel, said parts being constructed and adapted to raise the plough by locking the swing axle to the carrying-wheel by friction-clutch engagement, and raise the plough-beam by the draft or power

of the team." The first claim of the reissue uses the same language, with the prefix of the words "in a wheel-plough," and the addition, at the end, of the words "substantially as set forth."

The other alterations made in the specification are, that "*gang*-plough" is changed into "*wheel*-plough;" "*iron axle*" into "*journal;*" and "*hinged board*" into "*swing-axle.*"

The first claim of the original patent is for a combination of the lever P with the rod Q and the brake R. When force is applied to the lever P, motion is communicated through the rod Q to the brake R, which brake acts on the periphery of one of the two supporting or carrying-wheels F, the axle of which, *c*, is attached to a hinged board G, and by the action of the brake the hinged board is changed from a horizontal position to a vertical position, and the effect is to facilitate the operation of lifting the ploughs out of the ground. The first claim of the original patent covers only the combination of the three specific devices — the lever P, the rod Q, and the brake R. The first claim of the reissue calls the brake R "friction-clutch mechanism," and calls the lever P and the rod Q "means for engaging and disengaging the latter with the ground or carrying-wheel," and then claims the combination of four things — (1) friction-clutch mechanism; (2) means for engaging and disengaging it with the ground or carrying-wheel; (3) a swing-axle; (4) a ground or carrying-wheel.

The hinged board G of the plaintiff's original patent is ten or twelve inches wide, and at each end of it is a spindle for one of the two ground or carrying-wheels to run on, the spindles being in line with one edge of the hinged board. The forward ends of the plough-beams are attached by joints to what is the back edge of the hinged board while that board is horizontal, so that when it comes to be vertical by the action of the brake and the forward movement of the team, the forward ends of the plough-beams are raised in height a distance equal to the width of the hinged board, lifting the ploughs.

The defendants' machine is thus described in the opinion of the Circuit Court, and the description is conceded by the counsel for the plaintiff to be a fair one : " The defendants' machine

is a wheel or sulky plough, with a bent or cranked iron axle, upon which the plough-beams are pivoted at about two-thirds of the distance from the forward end to the coulter, so that the plough is nearly balanced upon the axle or crank, and the arrangement of the mechanism is such, that when the plough is running or operating in the ground, the crank part is in a horizontal position, and, when it is desired to raise the ploughs out of the ground, the crank is turned upward towards a vertical position, whereby the forward ends of the beam are raised until the point of the plough runs out of the ground. After the forward end of the beam has risen to a certain point, it strikes a stop, so that, when the crank has assumed a vertical position, the plough is balanced across the crank part of the axle, thus sustaining the plough at the height above the ground of the crank when in a vertical position. This turning of the crank-axle, so as to lift the plough, is accomplished by a friction band or brake, which is made to engage with an inner extension of the hub of one of the carrying-wheels, so that, as the wheel moves forward, it causes the crank-axle to turn upwards from a horizontal to a vertical position."

The Circuit Court was of opinion, that, if the state of the art was such as to entitle Davenport to a broad claim for any device by which the plough is lifted by the power of the team through a brake or friction-clutch, the defendants' machine would infringe. But, the court found that, prior to Davenport, devices had been used in agricultural implements for utilizing by means of a brake the motion of the carrying-wheel, through a crank-axle, in raising operative parts of the machine from the ground, which devices were so alike in structure and so analogous in use to those of Davenport, as to require his claims to be limited to his specific devices. In view of those prior devices the Court held that the defendants' friction-band could not be regarded as the same means for engaging and disengaging the carrying-wheel and the axle as the brake of Davenport; and that the defendants' crank-axle was not the plaintiff's hinged board. In these views we concur.

The reissue was applied for more than thirteen years after the original was granted, and after the defendants had begun

to make machines of the pattern now complained of. The original patent did not make a swing-axle and a carrying-wheel elements in the combination of the first claim of that patent. The reissue was evidently taken to cover the defendants' machine, which did not infringe the first claim of the original patent, because it did not have the Davenport brake R. No mistake or inadvertence is shown. The plaintiff, in his testimony as a witness, assigns as a reason for the reissue, that he thought there " was a mistake and a deficiency in the patent;" that he did not consider that other manufacturers respected it; that he considered it deficient because it applied the friction-brake to the periphery of the wheel; and that he believed the patent was entitled to cover different friction-clutch devices, so as to be a better protection' against infringers.

Without pursuing the subject further, we are of opinion that, within numerous decisions of this court, the reissued patent is invalid, as respects its first claim.

*Decree affirmed.*