KENNEY MFG. CO. v. J. L. MOTT IRON WORKS.

(Circuit Court, S. D. New York. May 2, 1905.)

1. PATENTS—INFRINGEMENT—WATER–CLOSET VALVES.
   The Cooper patent, No. 371,431, for a water-closet valve, *held* valid, and infringed as to claims 1 and 2.

2. SAME—VALIDITY—OPERATIVENESS OF DEVICE.
   It is sufficient to sustain a patent for a valve against the objection of inoperativeness if the combination of parts shown forms a workable device when attached to a structure for which it was evidently intended.

3. SAME—CONSTRUCTION OF CLAIMS.
   Where the field of invention has been narrowed by many prior devices in the same art, a patent for a new combination must be narrowly construed, and limited to the precise structure shown.
   [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 245.]

4. SAME—INFRINGEMENT—WATER-CLOSET VALVES.
   The Kenney patent No. 566,770, for an improvement in water-closet cisterns, which consists in an alleged novel combination of parts by which the closet is flushed, claim 1, in view of the prior art, must be narrowly construed. As so construed, *held* not infringed.

In Equity. Suit for infringement of letters patent No. 371,431, granted to William S. Cooper October 11, 1887, and No. 566,770, granted to David T. Kenney September 1, 1895, both relating to improvements in water-closet valves. On final hearing.

Frank L. Crawford and J. Adriance Bush, for complainant.
W. P. Preble, Jr., for defendant.

COXE, Circuit Judge. This action is based upon two letters patent, granted to William S. Cooper and David T. Kenney, respectively, for improvements in water-closets. Claims 1 and 2 of the Cooper patent, No. 371,431, were sustained by this court upon a record substantially similar to the one at bar. Kenney v. Newton (C. C.) 135 Fed. 101. This decision should be followed, but as the Cooper patent expired in October, 1904, the decree can only be for an accounting.

The Kenney patent, No. 566,770, granted September 1, 1895, is for improvements in water-closet cisterns consisting of alleged novel combination of parts by which the closet is flushed. The defenses are defect of title, lack of invention, noninfringement and invalidity of the claim in controversy, for the reason that it does not disclose an operative structure. It is unnecessary to discuss the question of title as the answer expressly admits the title to be in the complainant.

The first claim is the only one involved. It is as follows:

"(1) The combination, with a hollow and substantially buoyant main valve, of a casing inclosing the main valve and provided with a water inlet at its lower part and a water passage connecting its upper and lower parts, a weighted vent valve slidable in the said main valve and operating to depress it after having closed, and a stem operating positively to raise first the vent valve and then the main valve, substantially as set forth."

The claim is for a valve having the following elements: First. A hollow and substantially buoyant main valve. Second. A casing

inclosing the main valve provided with a water inlet at its lower part and a water passage connecting its upper and lower parts. Third. A weighted vent valve slidable in the main valve and operating to depress it after having closed. Fourth. A stem operating positively to raise first, the vent valve and then the main valve.

The drawing shows this valve attached to the lower end of a receptacle for water, hung a little above the closet by means of a hooked bracket secured to the wall, the outer valve casing being surrounded by water.

It is not denied that the combination is inoperative when separated from its environment, but this may be said of any valve, whether designed for water, air or steam. If the claim shows a combination of parts forming a workable device when attached to a structure for which it is evidently intended, it is enough. Taylor v. Sawyer Spindle Co., 75 Fed. 301, 309, 22 C. C. A. 203. The engineer's brake valve is inoperative until connected with the air system of the train, but any one skilled in the art would know at once how to make such connection. The question is whether the combination of the claim, if in other respects patentable, can be used, without material changes, in other water-closet systems?

The Kenney closet is flushed by depressing the hand lever which raises the vent valve. The main valve, thus relieved of the pressure above it, is then raised. As soon as the main valve begins to rise the water rushes under it, buoys it up, and passes directly from the holes in the periphery of the casing through the main-valve seat. The water above the main valve is forced from the upper part of the casing past the slidable vent valve and into the downward current of water. When the lever has been depressed one full stroke the handle is released and the two valves descend automatically. The weighted vent valve closes first by gravity, the hollow main valve being buoyed up by the water passing under it. When the vent valve has closed its weight depresses the main valve slowly and permits water, sufficient to flush the closet, to pass through it. "The small annular passage around the main valve permits the water to be sucked up into the space above it by the weight of the descending valves." The compressed air in the receptacle or cistern assists in forcing the water through the flushing pipe into the closet.

Few if any valves were made in exact accordance with the patent, and it may be said that no structure embodying all the details of the drawing was ever constructed; certainly no structure having the suspended cistern was a commercial success. In practice it was found necessary to make several changes in the Kenney valve. There have been added a regulating ring, intended to cut down the flow of water under high pressure, a relief screw, a "controller" and a small hole in the side of the casing. These are minor changes but they furnish a fair presumption, at least, that the device of the patent, if commercially operative at all, could not be transported to the so-called T-fitting in the condition shown and described in the specification.

Water-closets have been known for more than a century and the art of flushing them is very old. Numerous devices have been used for this purpose employing a great variety of valves. Many of these are shown in the record. For twenty years the defendant has been using the so-called "Premier valve," which is said to be, and certainly appears to be, the Kenney valve inverted. There are differences but they do not seem more radical and essential than the differences between the Kenney valve and the alleged infringing device.

The Premier shows a spring acting upon the vent valve. Kenney employs a weight; the one is the equivalent for the other. Indeed, the interchangeable use of weights and springs is the stock illustration for equivalents. Of course, minor differences are pointed out; they always are; but it cannot be that patentable novelty can be predicated of the substitution of a weight for a spring in a water-closet valve.

Craigie, in 1872, invented a slow-closing conical vent valve for water-closets, flattened on one side to permit a leakage into the variable chamber, in combination with a piston and a main valve. The weight of the vent valve is supplemented by a coiled spring.

The patent to Donnelly (1875) is for an improvement in valves for water-closets. It shows a hollow valve very similar to the "hollow and substantially buoyant main valve" of the Kenney structure and accomplishes the same result by means differing in details but not fundamentally.

The Quinn patent (1878) was cited in the Patent Office and in order to avoid the reference the Kenney structure was distinguished as follows:

"Applicant's valves are not closed by the pressure of the water above them as there can be no pressure above them until they have closed. Quinn's main valve is raised by the pressure of the water under it when the vent valve is raised, and this makes its action uncertain. Applicant's main valve is operated positively by the collar on its stem H."

The examiner was not convinced by this attempted distinction and disallowed claim 6 "on the same ground as before, as the term 'weighted' is not sufficiently distinctive to distinguish applicant's device from the device shown in the patent to Quinn, whose vent valve is weighted to a certain extent."

The main difference now pointed out—the same as that suggested to the Patent Office—is that the Quinn vent valve is not a weighted vent vale. The answer is also the same—"It is weighted to a certain extent" and it did not amount to invention to increase the weight.

The Quinn valve accomplishes the same general result as the Kenney valve, the principal difference being that in the latter the stem raises first the vent valve and then the main valve, while in the former the stem raises the vent valve only, the main valve, being buoyant, is raised by the pressure of water under it.

The Cooper patent (1872) has a spring weighted vent valve pushed up by a stem. When the valve is raised the water rushes out of the water chamber through an annular passage into the space

below the valve. A ring of rubber, or other equivalent material, is carried up by the stem and when the stem is released the rubber ring serves to retard the downward motion of the valve until it is gradually forced by water pressure to its seat.

The Gale patent (1877) shows an apparatus having a hollow and substantially buoyant main valve operating with other members to accomplish the same result as the Kenney device.

The operation of the combination is described as follows:

"The valve is connected inside of the chest or receiver, and pressure being applied to the lower end of the stem K by a lever and handle, (not here shown, but of any well-known construction,) the small plug valve at L is easily raised, while the cylinder G and its valve at E remains at rest on the seat at D. But as soon as the chamber G is opened at the top the water above in the valve chamber will flow into the chamber G, and the pressure being thereby relieved above, the pressure in the pipes at B will instantly raise the chamber, and thereby open the valve at D, and thereby cause the sluicing action to begin, and the action will continue until the water in the chamber above has accumulated again through the small plug cock at R, and thereby make the pressure the same on both ends of the cylinder G, when it will gravitate to its seat at D, and in doing so will slowly pass the inlet slit at B, and thereby so slowly cut off the flow as to prevent hammering in the pipes from the reaction of the flow. In the meantime the water in the cylinder G will escape at the holes O and P, through the hollow stem K, and the chamber will be thereby emptied ready for the next action."

The discussion of the prior art might proceed indefinitely, but enough has been said to show that the field of invention was an exceedingly narrow one when Kenney entered it. If the claim be upheld at all it must be limited to the instrumentalities as described and shown. A wide range of equivalents is out of the question; a broad construction of the claim is not permissible. Pomace Holder Co. v. Ferguson, 119 U. S. 335, 7 Sup. Ct. 382, 30 L. Ed. 406; Mast, Foos & Co. v. Stover Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856; Miller v. Eagle Co., 151 U. S. 186, 207, 14 Sup. Ct. 310, 38 L. Ed. 121; Harwood v. Railway Co., 11 H. L. Cas. 654; Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689.

The defendant's valve differs in several important particulars from the valve of the claim. The Kenney main valve is a loose-fitting chamber having a water passage between it and the casing. The defendant's main valve is a small cup having four holes in the side and four in the bottom and a guiding and retarding ring at the top. Defendant's vent valve is a very small affair, as compared with the similar valve of the claim, and operates in a different manner. In itself it is not a weighted valve in the sense of the Kenney patent. This is conceded in the complainant's brief. But it is said that being attached as it is to the operating lever the additional weight of the handle makes it a weighted valve. Assuming this to be so it is not the weighted valve of the patent, the change being an ingenious improvement which the complainant is not entitled to claim as an equivalent.

It is unnecessary to discuss the minor differences.

The court cannot resist the conclusion that the complainant is seeking to expand the first claim of the Kenney patent, which cov-

ers a crude and not particularly successful device, into a broad claim which will enable the complainant to levy tribute upon the entire art.

It follows that there should be a decree for the defendant upon the Kenney patent, and for the complainant, for an accounting, upon the first and second claims of the Cooper patent, but without costs to either party.